

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

Dated: July 30th, 2021

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BECKLEY

| IN RE: | CASE NO. 5:20-bk-50167 |
|---|---|
| SENETHA MICHELE MONTGOMERY, | CHAPTER 13 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |
| SENETHA MICHELE MONTGOMERY, | ADVERSARY PROCEEDING NO. 5:21-ap-05002 |
| Plaintiff, | |
| v. | |
| WILMINGTON TRUST, N.A. and NATIONSTAR MORTGAGE, LLC, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Pending is the Motion by Plaintiff Senetha Michele Montgomery for Sanctions Against Nationstar Mortgage LLC ("Nationstar") filed on March 25, 2021. Ms. Montgomery filed the Motion for Sanctions in both the main case and the above-captioned adversary proceeding [dckt. 46, A.P. dckt. 11] To avoid further confusion, this Court will refer to the docket entries in the adversary proceeding, not in the main case. On April 8, 2021, Nationstar filed its Response [dckt. 18], and on April 13, 2021, Ms. Montgomery filed her Reply [dckt. 19]. On April 15, 2021, a telephonic hearing was held on the matter. The Motion for Sanctions was continued for 30 days to allow counsel for Nationstar to submit relevant affidavits and for Ms. Montgomery to respond to them. Nationstar filed two affidavits [dckt. 24] on May 11, 2021, just two days before the

continued hearing. While counsel for Ms. Montgomery filed a Response [dckt. 25] on May 12, 2021, the Court allowed her a further seven (7) days from the hearing held on May 13, 2021, to file a supplemental response if desired. The supplemental response [dckt. 27] was filed on May 20, 2021, at which time the Court took the matter under advisement. All briefing having been received, the matter is ready for adjudication.

## I.

**A.   Factual Background**

Wilmington Trust, N.A. ("Wilmington") [1] holds a junior lien on Ms. Montgomery's home, and Nationstar services that loan on its behalf. Plaintiff's Motion for Sanctions, p. 1. Ms. Montgomery filed her Chapter 13 case with this Court on November 13, 2020. *Id.* at 2. Ms. Montgomery's schedules value her home (101 Rhododendron Trail, Beckley, WV 25801) at $75,500.00 based on a "detailed appraisal."[2] *Id.* She lists Creditor PHH Mortgage Services ("PHH") as having a senior secured claim of approximately $104,902.84,[3] and Nationstar as having a junior mortgage claim of approximately $24,377.72. *Id.* Her home serves as collateral for both loans. Ms. Montgomery categorizes the entire amount of Nationstar's claim as unsecured in her schedules. *Id.*

Ms. Montgomery lists Nationstar's claim in her Chapter 13 Plan in Section 3.5, which lays out "Secured Claims that are Subject to a Separate Motion or Adversary Proceeding Based on

---

[1] As Successor Indenture Trustee to Citibank, N.A., as Indenture Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Notes, Series 2006-SL2.
[2] The record contains no further information about the nature of this appraisal, the age of the appraisal, or the entity that conducted the appraisal.
[3] According to the Complaint, PHH services the mortgage for Wells Fargo Bank, N.A., as Trustee for Morgan Stanley Capital I Trust.

Valuation." *Id.* In that section, she values Nationstar's claim at $0.00 and proposes zero payments to Nationstar over the life of her case. *Id.*

Nationstar filed its proof of claim on January 22, 2021, asserting a *secured* claim in the amount of $24,666.84. *Id.* On February 17, 2021, Ms. Montgomery filed the Complaint in this adversary proceeding to set aside the mortgage lien of Wilmington because it is wholly unsecured based on the senior lien and the value of the property. Complaint, pp. 1-2.

On March 2, 2021, an appraiser hired by Nationstar came to Ms. Montgomery's home. Plaintiff's Motion for Sanctions, p. 3. The appraiser asked Ms. Montgomery questions relating to the value of her home, conducted an interior survey of the home, and took photographs. *Id.* Neither Ms. Montgomery nor her counsel knew that this appraisal was going to take place on that date. *Id.* at 4. Ms. Montgomery was working from home when the appraiser knocked on her door. Plaintiff's Reply to Defendant-Creditor's Response to Motion for Sanctions, p. 2. She was on her half-hour lunch break and had initially explained to the appraiser that she did not have time for the appraisal due to her workday constraints. *Id.* She states that she was embarrassed by her "informal" attire and by the state of her home; Ms. Montgomery is a single mother of two school-aged daughters, and she was entirely unprepared to show her home to a stranger. *Id.* By the time the appraiser left, Ms. Montgomery was "crying, shaking, and so upset that she could not do her work effectively for the remainder of the day." *Id.*

On March 23, 2021, counsel for Nationstar emailed counsel for Ms. Montgomery, informing him that his client wanted to have an "interior/full appraisal" performed on Ms. Montgomery's residence. Plaintiff's Reply to Defendant-Creditor's Response to Motion for Sanction, Exhibit 1. In that email, Nationstar's counsel asked if the appraiser had reached out to Ms. Montgomery's counsel about setting up a time for said appraisal. *Id.* Ms. Montgomery's

counsel responded with an email asking that Nationstar follow Rule 34 of the Federal Rules of Civil Procedure, which requires a formal request for inspection. *Id.* In this exchange, counsel for Ms. Montgomery did not address the appraisal that had already occurred on March 2, 2021. *See id.*

Nationstar asserts that the appraiser was sent to Ms. Montgomery's home on March 2, 2021, due to a clerical error. Response of Nationstar Mortgage LLC to Motion for Sanctions, pp. 2-3. Nationstar submitted two affidavits [dckt. 24], one from an employee of Xome, the third-party vendor that Nationstar used for this appraisal, and one from an employee of Nationstar. Defendant's Notice of Filing and Affidavits. The affidavits state that the correct contact information for Ms. Montgomery's counsel was entered into the computer system along with instructions for the appraiser to coordinate a time to perform the appraisal. Affidavit of Xome in Support of Response to Motion for Sanctions, p. 2; Affidavit of Nationstar Mortgage LLC in Support of Response to Motion for Sanctions, p. 2. However, Nationstar's employee inadvertently entered the information and instructions into a field that was not accessible by the appraiser, so this information was omitted in the directives sent by Xome to its employee. *Id.* Nationstar explains that its practice in bankruptcy matters is to coordinate all appraisals with debtors' counsel in cases in which debtors have retained counsel, and, without this clerical error, it would have done so. *Id.*

After learning of the March 2, 2021, appraisal which unsettled Ms. Montgomery, her counsel filed the instant Motion for Sanctions and asserted that, based on what she believed to be Nationstar's violation of the automatic stay, sanctions and damages should be assessed. In the Motion for Sanctions, Ms. Montgomery also asks the Court to find as "established" the valuation of her home at $75,500, along with further relief.

Nationstar agrees that the appraisal should have been conducted either with the agreement of opposing counsel or pursuant to a request under Rule 34, but asserts that it was not attempting to collect a debt, nor was it seeking to harass Ms. Montgomery. Nationstar states that it did not intend to violate the automatic stay; it was simply seeking to develop the evidentiary record for the adversary proceeding by conducting discovery in the form of an appraisal.

**B.      Summary of Arguments**

Ms. Montgomery asserts that, had Nationstar made a Request to Inspect under Rule 34 of the Federal Rules of Civil Procedure, none of the above-described events would have occurred. She also asserts that the conduct of Nationstar resulting in the erroneous appraisal was a willful violation of the automatic stay imposed by 11 U.S.C. § 362, and that Nationstar caused her "stress and annoyance and inconvenience." The relief requested by Ms. Montgomery is as follows: (1) that the Court determine that the conduct of Nationstar was prohibited by 11 U.S.C. § 362; (2) that it determine that the conduct was prohibited by Rules 34(b) and 30(b) of the Federal Rules of Civil Procedure; (3) that it declare that Ms. Montgomery's valuation of her home as stated in her Chapter 13 Plan be taken as established; (4) that it preclude the Defendants from adducing evidence that arose out of its misconduct, and; (5) that it "grant appropriate monetary relief." There is no specification in Ms. Montgomery's Motion for Sanctions as to any dollar amounts for damages.

Nationstar argues that the Motion for Sanctions cannot avoid the mortgage held by Wilmington, that the appraisal does not give rise to relief under 11 U.S.C. § 362, and that Ms. Montgomery did not properly seek relief under Bankruptcy Rule 7037.

## II.

A. **Legal Standards**

### *Willful Violation of the Automatic Stay*

The automatic stay, provided for generally in 11 U.S.C. § 362, gives the debtor a "breathing spell" from creditors by halting collection efforts, foreclosures, and harassment immediately after he or she files a bankruptcy petition. *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292 (4th Cir. 1986).[4] With regards to a violation of the automatic stay, § 362(k)(1) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

To make a showing that there has been a violation of the automatic stay, the moving party must prove by a preponderance of the evidence that "a willful stay violation occurred, that damages were suffered, and that the amount of relief requested is appropriate." *Green Tree Servicing, LLC v. Taylor,* 369 B.R. 282, 286 (S.D. W.Va. 2007).[5] While the Bankruptcy Code itself does not define the term, the meaning of "willful" in this context has been developed in this circuit. In *Budget Service,* the Fourth Circuit stated that a violation of the automatic stay is willful when "[the creditor] knew of the pending petition and intentionally attempted to [continue collection efforts] in spite of it." *Budget Service,* 804 F.2d at 292-93.

In *Green Tree*, the Circuit Court of Kanawha County had awarded the creditor, Green Tree, with a writ of possession on the debtor's mobile home on August 18, 2003, which the sheriff had

---

[4] *Quoting* House Report No. 95–595, 95th Cong. 1st Sess. 340–2 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 54–55 (1978); reprinted in 1978 U.S. Code Cong. & Adm. News 5787 at 5840 and 6296–7.
[5] *Citing Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 404–405 (1st Cir. BAP 2004); *Ball v. A.O. Smith Corp.*, 321 B.R. 100, 110 (N.D.N.Y. 2005), *aff'd*, 451 F.3d 66 (2d Cir. 2006); *In re McCarthy*, 350 B.R. 820, 826 (Bankr. N.D. Ind. 2006); *In re Clayton*, 235 B.R. 801, 806–807 (Bankr. M.D.N.C. 1998).

not yet acted upon. *Green Tree*, 369 B.R. at 284. On August 22, 2003, the debtor filed for Chapter 13 protection, and her attorney faxed counsel for Green Tree a letter advising the creditor of the filing. *Id.* Nevertheless, on September 5, 2003, Green Tree dispatched an agent to the debtor's residence while she was not at home; he used a device for disabling the locks on doors to force his way into the mobile home. *Id.* at 284-85. The agent placed a "For Sale" sign in a window inside the home and left a note on the outside of the front door notifying the debtor that she was obligated to vacate. *Id.* at 285. Later that day, an employee of the debtor's counsel called Green Tree's counsel to remind him of the bankruptcy filing. *Id.* On September 13, 2003, Green Tree's agent returned to the debtor's residence. *Id.* This time, the debtor was home, and the agent told her that, if she did not leave, he would bring the sheriff to remove her. *Id.* The bankruptcy court held that Green Tree had willfully violated the automatic stay and awarded damages to the debtor for "the time and effort of the Debtor in defending her rights in court and for her actual damages of being placed in fear and subjected to emotional trauma," and the District Court agreed and affirmed the bankruptcy court and its assessment of $2,000 in damages for the first occurrence and $3,000 for the second. *Id.* at 285-86.

Courts do not apply a "strict liability" approach when determining whether a creditor's actions constituted willful violation of the automatic stay. *In re Peterson*, 297 B.R. 467, 470 (Bankr. W.D.N.C. 2003); *see also, Budget Service*, 804 F.2d at 292-93. "It has been clearly established that an 'innocent clerical error' does not constitute a sanctionable violation of the stay." *In re Peterson*, 297 B.R. at 471 (citing *In re Hamrick*, 175 B.R. 890, 893 (W.D.N.C. 1994)). In *Peterson*, a bank erroneously sent a repossession notice to a debtor. *Id.* at 471. After being contacted by the debtor's bankruptcy counsel, the bank swiftly sent a correction notice and apology to the debtor. *Id.* Following this occurrence, 18 months after the petition was filed, the same bank

electronically withdrew funds from the debtor's bank account. *Id.* The withdrawal was triggered automatically when the Trustee made only a partial payment to the bank; it was discovered that the automatic draft code set up for that account had mistakenly not been changed following the debtor's bankruptcy filing. *Id.* After the debtor's counsel filed a motion for sanctions, the money that the bank withdrew in error was immediately refunded to the debtor. *Id.* The *Peterson* court determined that, although the debtor in this case was shocked, disturbed, and annoyed, there was no real injury to the debtor resulting from the bank's actions. *Id.* at 472. Although there were two separate instances of inappropriate contact in *Peterson*, the court found no "indicia of indifference to the stay," no "aggravated conduct" by the bank, and no refusal to cease action after being notified of the errors. *Id.* Notably, the bankruptcy court found that counsel for the debtor had handled the situation in such a "vexatious" manner that it used its inherent power to sanction the debtor's attorney for bad faith conduct.[6] *Id.* at 473. This decision was based largely on the attorney's failure to contact counsel for the bank before filing a motion for sanctions just five days after his client advised him of the problem. *Id.* at 472. The court also noted that the damages claimed by the debtor were "wholly excessive," "extortive rather than remedial," and that counsel's efforts were "designed as much to mine fees out of th[e] situation as [they were] to solve the problem for the debtor." *Id.*

### *Bankruptcy Rule 7034*

Federal Rule of Civil Procedure 34, made applicable to this adversary proceeding through Bankruptcy Rule 7034, governs "entry upon land for inspection." Fed. R. Bank. P. 7034. Rule 34(a)(2) provides that "a party may serve on any other party a request within the scope of Rule

---

[6] The debtor's attorney in *Peterson* was ordered to pay the costs that the bank incurred from litigating this matter, which amounted to $3,233.68. *Peterson*, 297 B.R. at 473.

26(b) . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property . . ." Fed. R. Civ. P. 34(a)(2).

The procedure for making such a request is outlined under Rule 34(b), which lays out the contents of the request and procedures for responses and objections. Rule 34(b)(1) states that the request:

> (A) must describe with reasonable particularity each item or category of items to be inspected; [and]
> (B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts . . .

Fed. R. Civ. P. 34(b)(1)(A)-(B).

**B.     Analysis**

The Defendant-Creditor's conduct in the case at hand does not rise to that of "willful" as applied by courts in the Fourth Circuit. Nationstar concedes that the appraisal was conducted in error, much like the bank in *Peterson*. Importantly, Ms. Montgomery has not offered any dollar amounts for actual or punitive damages. Discussion of "injury" in the filings is limited to "stress and annoyance and inconvenience." Without an assessment of damages, this Court cannot sanction Nationstar for willful violation of the automatic stay, even if it found that the conduct met the legal threshold.

Ms. Montgomery cites the *Green Tree* case for support and looks to the damage amounts from that case as reasonable awards for a creditor's entry into the debtor's residence. This Courts notes several differences between *Green Tree* and the instant case. First, the agent of Green Tree broke into the debtor's home while she was not there, which goes far beyond the appraiser knocking on Ms. Montgomery's door in this case. Second, the posting of a "For Sale" sign and

eviction notice directly interferes with a debtor's ability to reorganize, whereas an appraisal – albeit inappropriate – in connection with discovery for an adversary proceeding is far less alarming and aggressive. The intentions of Green Tree were clear: to evict the debtor and sell her mobile home. Here, Nationstar's actions were taken in furtherance of disputing the value of Ms. Montgomery's home in an adversary proceeding brought against it to avoid a secondary lien that it services for Wilmington. Nationstar's conduct in the instant case is a far cry from the harassment committed in *Green Tree*; it can only be categorized as inadvertent.

Finally, the Court notes that the debtor's attorney in *Green Tree* reached out to counsel for the creditor to remind him of the automatic stay, and he only moved for sanctions after Green Tree's agent went to the debtor's home a second time and threatened to have the sheriff remove her if she did not vacate. Here, Ms. Montgomery's counsel filed the Motion for Sanctions without any warning to Nationstar's counsel. This was after he had ample opportunity to address the erroneous appraisal either by phone call or via the email exchange where he requested that Nationstar's counsel follow Rule 34 protocols for obtaining an appraisal. While this Court chooses not to impose sanctions against Ms. Montgomery's counsel like the *Peterson* court did, it still finds his lack of communication with Nationstar's counsel before moving for sanctions to be disturbing. Federal Rule of Civil Procedure 37, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7037, states that, if there is a breakdown in discovery (including inspection requests under Rule 34), the party compelling discovery must certify that it has, in good faith, conferred or attempted to confer with the opposing party. Fed. R. Civ. P. 37(a)(1). Ms. Montgomery's Motion for Sanctions, partially based on a violation of Rule 34, was filed with no such certification. And, indeed, it is clear to this Court that Ms. Montgomery's counsel made no such effort to meet and confer with Nationstar prior to submitting the Motion for Sanctions.

Nevertheless, the Court recognizes Ms. Montgomery's request that Nationstar's counsel follow the procedures outlined under Rule 34 of the Federal Rules of Civil Procedure. While the appraisal that has already taken place does not constitute willful violation of the automatic stay, it was still conducted without a proper request to inspect.

### III.

Firstly, this Court finds that Nationstar's conduct was not in willful violation of the automatic stay under 11 U.S.C. § 362. The appraisal was conducted as the result of an "innocent clerical error," and is therefore not sanctionable in this case. *Peterson*, 297 B.R. at 471 (citing *Hamrick*, 175 B.R. at 893). Secondly, this Court finds that, even though Nationstar's conduct did not rise to the level of an automatic stay violation, the appraisal was conducted in violation of Federal Rule of Civil Procedure 34. Thirdly, Ms. Montgomery's request that the valuation of her home as stated in her Chapter 13 Plan be taken as established is wholly excessive and inappropriate under the circumstances. None of the matters discussed in any of the briefing relate to or support a finding of valuation. Finally, no monetary relief will be granted to Ms. Montgomery because she has not demonstrated that she is entitled to any. Accordingly,

**IT IS ORDERED** that the Nationstar and Wilmington must follow Rule 34 procedures if they wish to conduct an appraisal on Ms. Montgomery's property that would be admissible evidence in this adversary proceeding. And because the appraisal carried out on March 2, 2021 was performed in violation of Rule 34, it is deemed inadmissible. To this extent, Ms. Montgomery's Motion for Sanctions will be, and is hereby, **GRANTED IN PART**.

However, because there was no violation of the automatic stay and, thus, sanctions under 11 U.S.C. § 362 are not warranted under the circumstances, **IT IS ORDERED** that the remainder of Ms. Montgomery's Motion for Sanctions be, and is hereby, **DENIED**.